**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **DOMINIC J. DABBENE, JOHN A. GAMBONE, AND CAROLINE MOORE,** | **NO.  20-1938** |
| **Defendants.** | |

**<u>OPINION</u>**

In this insurance coverage dispute, Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") seeks a declaratory judgment that it has no duty to defend or indemnify Defendants in any actions arising from a March 2019 motor vehicle accident involving Defendant Dominic Dabbene.  State Farm is currently defending all Defendants in a state court action premised on the March 2019 accident.  Angela Cieri, the plaintiff in the underlying state action, moves to intervene in this litigation, and State Farm moves for summary judgment on its declaratory judgment claim.

I.      **BACKGROUND**

   A.  **The Accident**

Defendants Dabbene, Caroline Moore, and John Gambone (collectively, "Defendants") are family members, all of whom reside in the same household in Montgomery County, Pennsylvania.  Moore and Gambone are married, and Dabbene is Moore's son.  The family insures three vehicles.  Two of these vehicles are insured by Moore through the State Farm policy at issue in this case: a 2010 Volkswagen Jetta and a 2014 Toyota Corolla, the latter of which is typically driven by Dabbene.  Gambone separately insures his own vehicle, a 2008 Cadillac DTS, through Progressive.  Dabbene is expressly listed as an excluded driver under the

Cadillac's Progressive policy.

On March 13, 2019, Dabbene—unable to drive the Toyota Corolla, which was in the shop—borrowed Gambone's Cadillac.  While driving the Cadillac home from work, Dabbene was involved in an accident with a motorcycle operated by James Gambone (no relation to Defendant Gambone) and occupied by Angela Cieri.  As indicated in the police report, James Gambone and Cieri both suffered severe injuries to their left legs.  The motorcycle and Cadillac were damaged.  Defendants reported the accident to State Farm for liability coverage under Moore's policy.

### B.  The Policy

Moore's State Farm policy provides liability coverage for damages and defense costs to "insured[s]."  For the purposes of liability coverage, and as relevant here, the policy defines "insured" as:

> 1.  **you** and **resident relatives** for:
>      a.  the ownership, maintenance, or use of:
>          (1) **your car**;
>          (2) a **newly acquired car**; or
>          (3) a **trailer**; and
>      b.  the maintenance or use of:
>          (1) a **non-owned car**; or
>          (2) a **temporary substitute car**.[1]

The policy expressly defines "resident relative," as well as the terms "you" and "your."  It defines a "resident relative" as:

> a **person**, other than **you**, who resides primarily with the first **person** shown as a named insured on the Declarations Page and who is:
>      1.  related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school

---

[1] The State Farm policy appears to use bold and italicized text to set apart certain terms and phrases that are defined within the policy.  To the extent this opinion quotes from the policy, any emphasis appears in the original document and has not been provided by the Court.

2

and otherwise maintains his or her primary residence
with that named insured; or

2. a ward or a foster child of that named insured, his or her
spouse, or a ***person*** described in 1. above.

Importantly, the policy defines "you" and "your" as follows:

> ***You*** or ***Your*** means the named insured or named insureds shown on
> the Declarations Page. If a named insured shown on the Declarations
> Page is a ***person***, then ***"you"*** or ***"your"*** includes the spouse of the
> first ***person*** shown as a named insured if the spouse resides
> primarily with that named insured.

Moore is the only named insured listed on the policy's Declarations Page.

The policy defines "your car" as the vehicles listed on the Declarations Page, in this case,

the 2010 Volkswagen Jetta and the 2014 Toyota Corolla.  It sets out three circumstances under

which State Farm will provide liability coverage for use of a car that is not "your car," namely,

when the car is (1) newly-acquired, (2) non-owned, or (3) a temporary substitute.  A car ceases to

be "newly acquired" on "the effective date and time of a policy . . . issued by [State Farm] or any

other company that describes such ***car*** as an insured vehicle."  The policy defines "non-owned

car" as follows:

> ***Non-Owned Car*** means a ***car*** that is in the lawful possession of ***you***
> or any ***resident relative*** and that neither:
> > 1. is ***owned by:***
> > > a. ***you***;
> > > b. any ***resident relative***;
> > > c. any other ***person*** who resides primarily in ***your***
> > > household; or
> > > d. an  employer of any ***person*** described in a., b., or
> > > c. above; nor
> > 2. has been operated by, rented by, or in the possession of:
> > > a. ***you***; or
> > > b. any ***resident relative***
> > during any part of each of the 31 or more consecutive
> > days immediately prior to the date of the accident or ***loss***.

Most critical to the parties' present dispute is the third circumstance under which an

insured will be entitled to liability coverage for a car not listed on the policy's Declarations Page. The policy defines "temporary substitute car" as follows:

> ***Temporary Substitute Car*** means a ***car*** that is in the lawful possession of the ***person*** operating it and that:
>
> 1. replaces ***your car*** for a short time while ***your car*** is out of use due to its:
>    a. breakdown;
>    b. repair;
>    c. servicing;
>    d. damage; or
>    e. theft; and
> 2. neither ***you*** nor the ***person*** operating it own or have registered.

The policy provides that State Farm will pay "damages an ***insured*** becomes legally liable to pay because of: (1) ***bodily injury*** to others; and (2) damage to property caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy." The policy also provides that State Farm will pay for "attorney fees for attorneys chosen by ***us*** to defend an ***insured*** who is sued for such damages; and court costs charged to an ***insured*** and resulting from that part of a lawsuit: (1) that seeks damages payable under this policy's Liability Coverage; and (2) against which ***we*** defend an ***insured*** with attorneys chosen by ***us***."

### C.  The Aftermath

To recap: the Cadillac driven by Dabbene at the time of the March 13 accident was not insured under Moore's State Farm policy but was instead separately insured by Gambone through a Progressive policy, under which Dabbene was an excluded driver.  Defendants sought coverage for the accident from State Farm.

On April 3, 2019, State Farm notified Moore by letter that it was disclaiming coverage, given its determination that the Cadillac was not a covered vehicle under Moore's policy.  State Farm wrote:

> We have completed our investigation as to whether Policy Number
> 129927938I applies to the incident that occurred on March 13, 2019
> and must inform you we disclaim any and all coverage because the
> vehicle being driven by [Dabbene] was not on the policy. There are
> a few options for covering vehicles not on our policy—as a Non-
> Owned Car, a Newly A[c]quired Car, or a Temporary Substitute
> Car. The 2008 Cadillac DTS is owned by [Gambone], so it is not a
> Newly A[c]quired Car. Per our policy, Non-Owned Cars and Newly
> A[c]quired Cars cannot be owned by our policyholder or their
> spouse in order to qualify for coverage. Since Caroline [Moore] is
> the name on the policy, [Gambone] would be the spouse of the
> policyholder, therefore the vehicle does not qualify as either a Non-
> Owned Car or a Newly A[c]quired Car.

On April 8, Gambone's counsel notified State Farm that Dabbene was an excluded driver under

the Progressive policy and requested State Farm open a defense file. State Farm responded on

April 15, reiterating to Gambone's counsel that State Farm was "disclaim[ing] any and all

coverage because the vehicle that was being driven by [Dabbene] at the time of the loss does not

qualify as a covered vehicle under our policy."

Cieri filed suit on July 17, 2019 against all Defendants in the Montgomery County Court

of Common Pleas. She alleges that Dabbene's negligent operation of the Cadillac caused her to

suffer significant injuries, including multiple fractures of her left leg which required surgery and

resulted in severe scarring and cosmetic disfigurement. Cieri further alleges that Dabbene was a

permissive user of the Cadillac, and that Gambone and Moore negligently entrusted the vehicle

to Dabbene. On August 26, Defendants' counsel notified State Farm of Cieri's state court action,

and "demand[ed] defense and indemnification for [Cieri's] claims." State Farm retained counsel

for Defendants in September 2019, but in doing so sent Defendants a letter, dated September 12,

2019, informing them of the following:

> We wish to call your attention to the fact that we specifically reserve
> our right to deny coverage to you and anyone claiming coverage
> under the policy for the following reason(s):

> It is questionable whether the vehicle involved in the accident constitutes either temporary substitute, newly-acquired, or a non-owned automobile or car as covered in the policy.
>
> The defense of this action by the law firm we have selected on your behalf is not to be considered a waiver of such policy defense or any policy defense which may be involved in this case.  If we do not hear from you to the contrary, we will assume it is acceptable for us to continue handling the case on these terms.

Defendants proceeded to file their responsive pleadings in the state court action on January 7 and January 14, 2020.  Cieri responded to Defendants' new matter on February 4, 2020.  Although James Gambone—the driver of the motorcycle involved in the March 13 accident—has not yet filed suit, the parties anticipate that he too will commence a personal injury action against one or more of the Defendants.

On April 17, 2020, State Farm filed the present action, seeking, under 28 U.S.C. § 2201, a declaratory judgment that State Farm is not obligated to defend or indemnify Defendants for any claims—pending or future—arising from Dabbene's March 13 accident.  Defendants filed their Amended Answer on June 16, 2020, asserting estoppel as an affirmative defense and bringing cross-claims against State Farm for breach of contract and declaratory judgment.  On June 17, 2020, Cieri filed a motion to intervene in this action.  State Farm filed a response in opposition to Cieri's motion on July 7, 2020.

On September 14, 2020, after the close of the parties' 90-day discovery period,[2] State Farm filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Though not a party to this action, Cieri nevertheless filed an opposition to State Farm's motion on October 5, 2020.  Defendants filed their opposition to State Farm's motion on October 8,

---

[2] The parties were given, at Defendants' request, a 90-day discovery period, which expired on August 31, 2020. Defendants performed no discovery during the discovery period.

2020.[3]  In addition to raising their own arguments in opposition to State Farm's summary judgment request, Defendants also reference and incorporate the legal arguments raised by Cieri in her opposition memorandum.

## II.    DISCUSSION

### A.  Cieri's Motion to Intervene

The first order of business is to address Cieri's motion to intervene.  She cites two sources of authority in support of her motion.  First, Cieri argues that she is entitled to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2).  Second, she contends that she should be allowed to permissively intervene in this action under Rule 24(b)(1)(B).  Alternatively, Cieri suggests that if her motion to intervene is denied, the Court should decline to exercise jurisdiction over this matter.

#### i.  Intervention as of Right

Under Federal Rule of Civil Procedure 24(a)(2):

> [a] non-party is permitted to intervene . . . if: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365-66 (3d Cir. 1995) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)).  "Each of these requirements must be met to intervene as of right."  *Id.* at 366.

State Farm makes no argument concerning the timeliness of Cieri's motion, but rather urges that Cieri has no "interest" in the present litigation, as that term is defined in the Third

---

[3] Defendants failed to file a Statement of Disputed Materials Facts, as required by this Court's local policies and procedures.  Accordingly, Defendants are deemed not to dispute the facts as set forth in State Farm's Statement of Undisputed Material Facts.  Regardless, as discussed *infra*, it is clear from the parties' filings that the facts essential to judgment are undisputed.

Circuit's intervention jurisprudence.  As this Court has recently observed, the Third Circuit has defined "interest" narrowly for the purposes of Rule 24(a)(2).  *Atain Ins. Co. v. Lesser*, 2020 WL 919698, at *1 (E.D. Pa. Feb. 25, 2020).  "In general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene.  Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene."  *Mountain Top*, 72 F.3d at 366 (citations omitted).  Accordingly, in *Liberty Mutual Insurance Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005), the Third Circuit found that:

> asbestos victims seeking to intervene in a declaratory judgment action filed against an asbestos manufacturer by its insurer did not have sufficient "interest" in the manufacturer's policies to justify intervention as of right.  The proposed-intervenors had "no property interest" in the policies, but rather, "the kind of economic interest in the insurance proceeds that we have held does not support intervention as a matter of right."

*Atain*, 2020 WL 919698, at *1 (citation omitted) (quoting *Treesdale*, 419 F.3d at 222).

"*Treesdale* [thus] stands for the proposition that an injured party is not entitled to intervene as a matter of right under Rule 24(a) in a declaratory judgment action over an insurance policy." *State Farm Fire & Cas. Co. v. Spector*, 2016 WL 8668295, at *5 (E.D. Pa. Nov. 4, 2016).

The only "interest" in the present litigation asserted by Cieri is her interest in benefiting from an indemnity payment issued by State Farm, should she prevail in the underlying action.  In other words, Cieri has a contingent financial interest in the insurance proceeds.  If State Farm succeeds in obtaining a judgment that Dabbene's March 13 accident is not covered under the policy, then Cieri faces the possibility that she will be insufficiently compensated for the injuries she sustained as a result of the accident.  This economic interest is not, however, enough to justify intervention as a matter of right in federal court.  *Treesdale*, 419 F.3d at 222.

Cieri further contends that intervention is appropriate given the fact that, if this action were to proceed in Pennsylvania state court, she, as the plaintiff in the underlying tort action, would be considered an indispensable party under the Pennsylvania Declaratory Judgment Act. She relies on *Vale Chemical Co. v. Hartford Accident & Indemnity Co.*, 516 A.2d 684 (Pa. 1986), in which the Pennsylvania Supreme Court interpreted the Pennsylvania Declaratory Judgment Act such "that where claims are asserted against an insured, the persons asserting the claims are indispensable parties in a declaratory judgment action on the issue of coverage between the insured and the insurance carrier." *Id.* at 686 (quoting *Pleasant Twp. v. Erie Ins. Exch.*, 348 A.2d 477, 479-80 (Pa. Commw. 1975)). The *Treesdale* court, however, expressly considered the implications of *Vale* for declaratory judgment actions proceeding in federal court, and determined that because *Vale* presents a procedural and jurisdictional, rather than a substantive, ruling, federal courts are not required to apply *Vale*'s holding when resolving a tort victim's motion to intervene in a declaratory judgment action between an insurer and its insured. *Treesdale*, 419 F.3d at 229. Under *Treesdale*, Cieri is not entitled to intervene in the present action. Thus, Cieri's motion to intervene under Rule 24(a)(2) shall be denied.

### ii. Permissive Intervention

Cieri also asks that she be allowed to permissively intervene in this action pursuant to Rule 24(b)(1)(B), which states that a "court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). She asserts, without citation to authority, that her negligent entrustment claim against Defendants Gambone and Moore creates a common question of law or fact between this matter and the underlying action.

To state a claim for negligent entrustment under Pennsylvania law, a plaintiff "must

allege facts that the defendant (1) permitted a third person, (2) to operate his [or her] vehicle, and (3) that the defendant knew or should have known that the third person intended to or was likely to use the vehicle in a way that would harm another person." *Simpson v. Buchanan*, 2020 WL 4504444, at *2 (E.D. Pa. Aug. 5, 2020). Although these issues resonant in the underlying state court action in which they are being litigated, they are not at issue here. Rather, as discussed further below, the only issue in this litigation is whether the Cadillac is a covered vehicle under the express terms of Moore's State Farm policy.[4]

Cieri's permissive intervention argument is, moreover, foreclosed by *Treesdale*, in which the Third Circuit held that "[w]here a proposed intervenor has only a contingent financial interest in a declaratory judgment action to establish insurance coverage, he/she cannot accurately claim that there are common questions of law or fact between the coverage dispute and actions to determine liability for injuries [the defendants in the underlying action] may have caused." *Treesdale*, 419 F.3d at 228. As the *Treesdale* court explained:

> The declaratory judgment action turns on the interpretation of the contracts of insurance between [defendant] PMP and [insurer] Liberty Mutual. It has nothing to do with whether PMP caused asbestos-related bodily injuries to [the asbestos claimants] or anyone else. Similarly, the personal injury suits against PMP have nothing to do with interpreting PMP's insurance policies with Liberty Mutual.

*Id.* As in *Treesdale*, Cieri's state court action against Defendants turns on whether and to what extent Defendants are responsible for her injuries, whereas the present action turns solely on interpretation of the insurance contract between State Farm and Moore. *See id.*; *Atain*, 2020 WL 919698, at *2. Cieri's financial interest in the outcome here does not create a common question

---

[4] To the extent Gambone's ownership of the Cadillac is relevant to both Cieri's negligent entrustment claim and the Court's determination of the present coverage dispute, Defendants do not dispute that Gambone owned the Cadillac driven by Dabbene at the time of the March 13 accident.

of law or fact between this and the underlying action, *see Atain*, 2020 WL 919698, at \*2, and Cieri's request for permissive intervention will thus be denied.

### iii.   *The Jurisdictional Issue*

Finally, Cieri argues that if her motion to intervene is denied, the Court should decline to exercise jurisdiction over this matter.  There is no dispute that the parties in this case are diverse and that the amount in controversy exceeds the jurisdictional amount; accordingly, there is diversity jurisdiction.  *See* 28 U.S.C. § 1332(a).  State Farm's Complaint, however, seeks only one form of relief, namely, a declaratory judgment clarifying State Farm's defense and indemnification obligations with respect to Dabbene's March 13 accident.  This case therefore falls within the scope of the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.  Before addressing the merits of such an action, "it is necessary to determine whether the Court should even entertain [the] case under the Declaratory Judgment Act at all."  *Emp'rs Mut. Cas. Co. v. Burke Landscaping, Inc.*, 2014 WL 981195, at \*1 (E.D. Pa. Mar. 13, 2014) (alteration in original) (quoting *Star Ins. Co. v. Treible's Wrecker Serv., Inc.*, 2013 WL 5603578, at \*2 (M.D. Pa. Oct. 11, 2013)).

The DJA provides that "courts '*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014) (quoting 28 U.S.C. § 2201(a)). Because it grants discretionary, rather than compulsory, jurisdiction to the district courts, the DJA has long been recognized as an exception to the general duty that the federal courts must hear cases over which they have been granted subject matter jurisdiction.  *Id.* at 134-35 (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).  Declining to exercise jurisdiction is "authorized 'in the sound

exercise of [the district court's] discretion,'" which is "governed by 'considerations of practicality and wise judicial administration.'" *Id.* at 139 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

Still, while "[t]he discretion courts exercise in actions seeking only declaratory relief is 'substantial,'" this discretion is not unbounded. *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (quoting *Reifer*, 751 F.3d at 140). In *Reifer*, the Third Circuit outlined a two-part analysis for determining whether to exercise jurisdiction under the DJA. *Reifer*, 751 F.3d at 144-47. First, the district court must determine whether there is a pending parallel state proceeding. *Id.* at 143, 146. "[T]he absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise." *Kelly*, 868 F.3d at 282 (quoting *Reifer*, 751 F.3d at 144). "[I]f a state parallel proceeding does not exist, then 'as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors.'" *Id.* (quoting *Reifer*, 751 F.3d at 144). These factors include the following:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race

12

for *res judicata*; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146.

A state proceeding is parallel with a federal declaratory judgment action if it "involv[es] the same parties and present[s the] opportunity for ventilation of the same state law issues." *Kelly*, 868 F.3d at 284 (quoting *Wilton*, 515 U.S. at 283). In this case, State Farm is not a party to the underlying action and, as discussed above, the question of whether Moore's State Farm policy covers Defendants' potential liability in the underlying action is distinct from the question of whether Defendants were negligent in connection with the March 13 accident. *See Kelly*, 868 F.3d at 287 (applying a "strict definition of parallelism" and observing that "a state tort action and the insurer's federal declaratory judgment action over coverage [are] non-parallel"); *Colony Ins. Co. v. Troensa Constr., Inc.*, 2018 WL 4676038, at *7 (D.N.J. Sept. 28, 2018) ("[T]he *Kelly* decision creates a *per se* presumption that an insurer's declaratory judgment action is distinct from underlying tort actions in state court where the insurer is a non-party."). This case and the underlying action are not parallel.

With no parallel state proceeding pending, the Court should hear this declaratory judgment action unless the *Reifer* factors weigh in favor of abstention. The first *Reifer* factor supports jurisdiction, as a declaration by this Court will resolve the uncertainty between State Farm and Defendants concerning the scope of the policy's coverage. Second, Defendants are residents of Montgomery County, which is in the Eastern District, and adjudication in this Court thus presents no greater inconvenience to the parties than adjudication in state court. The third factor, the public interest in settlement of the uncertainty of obligation, is neutral in this private

and limited dispute.  *See Scottsdale Ins. Co. v. RSE Inc.*, 303 F.R.D. 234, 240 (E.D. Pa. 2014)

("[T]he public interest in settling the uncertainty of Scottsdale's [insurance coverage] obligation

weighs neither for nor against a resolution in federal court.").  The availability and relative

convenience of other remedies, the fourth *Reifer* factor, supports jurisdiction.  "Because this

action already exists, it is arguably more convenient for the parties to litigate their insurance

coverage dispute in this federal forum, rather than start anew in state court."  *Landmark Am. Ins.*

*Co. v. Mandracchia*, 2019 WL 3934913, at *3 (E.D. Pa. Aug. 19, 2019) (quoting *Nationwide*

*Prop. & Cas. Ins. Co. v. Zatyko*, 2016 WL 6804436, at *4 (E.D. Pa. Nov. 16, 2016)).

  The fifth and sixth factors, asking courts to consider the federal courts' general policy of

restraint when the same issues are pending in state court and the avoidance of duplicative

litigation, both weigh in favor of exercising jurisdiction, because there is no parallel proceeding

pending in state court.  *See id.* at *4 ("Since the Court has determined that [the underlying

action] is not a parallel proceeding, [the fifth and sixth] *Reifer* factors weigh in favor of this

Court's exercise of discretionary jurisdiction."); *Zatyko*, 2016 WL 6804436, at *4 (finding the

sixth *Reifer* factor "weighs in favor of this Court exercising jurisdiction since there currently

exists no duplicative litigation in state court").  There is no indication that the parties here are

engaging in any procedural fencing or a race for *res judicata*; accordingly, the seventh factor also

favors exercising jurisdiction.

  The eighth and final *Reifer* factor requires a court, in the insurance context, to consider

the inherent conflict of interest between an insurer's duty to defend its insured in state court and

the insurer's contention that the underlying action does not implicate coverage under the

insurance policy.  This factor supports jurisdiction.  "Because 'the facts at issue in the

[underlying action] are not at issue in [this] declaratory judgment action . . . there is no danger

that [State Farm] will establish facts in the declaratory judgment action that could prejudice [the Defendants] in the state court suit." *Landmark*, 2019 WL 3934913, at *4 (quoting *Westfield Ins. Co. v. Wertz*, 2011 WL 2135579, at *3 (E.D. Pa. May 27, 2011)); *Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1225 (3d Cir. 1989) (observing that a conflict of interest could exist if "'the same factual question' lies at the heart of both an insurance coverage dispute and the underlying tort action").

Cieri suggests that the Court should decline to exercise jurisdiction over this matter if she, as the tort victim in the underlying state action, is not a party. As discussed above, however, Cieri's financial interest in the outcome of this federal litigation does not entitle her to participate in the parties' dispute.[5] In sum, with no parallel state proceeding pending and no *Reifer* factors weighing against retaining jurisdiction, the Court will exercise jurisdiction over State Farm's declaratory judgment action.

### B. State Farm's Motion for Summary Judgment

Moving now to the merits of State Farm's motion for summary judgment on its

---

[5] Cieri cites to *Employers Mutual Casualty Co. v. Burke Landscaping, Inc.* in support of her position. This case is inapposite, for several reasons. In *Employers Mutual*, the court declined to exercise jurisdiction over a declaratory action involving interpretation of an insurance contract. *Emp'rs Mut.*, 2014 WL 981195, at *3. Despite acknowledging that there was no parallel state declaratory action regarding the insurance policy, the court nevertheless found that: (1) the same issues were pending in the underlying personal injury action, and (2) allowing both cases to proceed in state court "would promote judicial economy by avoiding duplicitous and piecemeal litigation." *Id.* at *2. In support, the court cited to the Third Circuit's non-precedential opinion *Atlantic Mutual Insurance Co. v. Gula*, 84 F. App'x 173 (3d Cir. 2003), in which the court observed that "even if the [insurance] coverage issue is not currently pending [in state court], it will as a matter of logic necessarily arise" in garnishment proceedings, should the tort victim prevail in the underlying action. *Gula*, 84 F. App'x at 175. In *Kelly*, however, the Third Circuit rejected this reasoning, clarifying that "[p]roceedings are not parallel merely because they have the potential to dispose of the same claims." *Kelly*, 868 F.3d at 283; *see also id.* at 283-84 ("We hold that the mere potential or possibility that two proceedings will resolve related claims between the same parties is not sufficient to make those proceedings parallel; rather, there must be a substantial similarity in issues and parties between contemporaneously pending proceedings."). Further, *Employers Mutual* predates *Reifer* and, accordingly, fails to apply the two-step jurisdictional analysis governing the present dispute.

declaratory judgment claim, the motion shall be granted for the reasons set forth below.[6]

### i. *Legal Standard*

Summary judgment will be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A genuine dispute exists "when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."  *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).  In ruling on a motion for summary judgment, "[t]he reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).  The Court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

---

[6] Defendants suggest this action is not ripe because State Farm retained counsel for Defendants in the underlying state action and Defendants' liability in that action has yet to be determined.  It is true that "[a]s a general rule, a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action."  *Am. States Ins. Co. v. Component Techs., Inc.*, 420 F. Supp.2d 373, 374 (M.D. Pa. 2005) (quoting *Cincinnati Ins. Cos. v. Pestco, Inc.*, 374 F. Supp.2d 451, 465 (W.D. Pa. 2004)).  But here, State Farm requests judgment not only on its duty to indemnify, but also on its duty to defend in the underlying action.  "[A]n insurer's declaratory action to determine its duty to defend an underlying suit prior to a finding of liability is justiciable."  *Id.* at 375-76 (emphasis omitted) (citing *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981)).  Moreover, because the duty to defend is "broader than the duty to indemnify, there is no duty to indemnify [a claim] if there is no duty to defend [it.]"  *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005).  Accordingly, "[w]here a plaintiff requests relief on the basis of both [the duty to defend and the duty to indemnify], [both claims] are ripe."  *Cont'l Cas. Co. v. Westfield Ins. Co.*, 2017 WL 1477136, at *4 n.4 (E.D. Pa. Apr. 24, 2017).

To the extent, however, that State Farm requests a determination of its obligations in any hypothetical future actions that may arise from Dabbene's March 13 accident, its claim is not ripe.  *See Hartford Ins. Co. of the Midwest v. Dana Transp. Inc.*, 2018 WL 10152321, at *4 (D.N.J. May 21, 2018) ("[A] duty-to-defend claim is not ripe without an underlying action or a threatened lawsuit.").  State Farm's concern appears to be that James Gambone, the driver of the motorcycle involved in the March 13 accident, will shortly initiate a personal injury action asserting claims similar to those asserted by Cieri in the underlying state action.  But while the Court's resolution of the instant dispute may be dispositive as to State Farm's duties in any future litigation arising from Dabbene's accident, only State Farm's request for a declaratory judgment clarifying its duties with respect to the pending underlying state action is ripe and will be addressed.

### ii.  The State Farm Policy

The issue in this case is narrow.  Does the plain language of the State Farm policy preclude liability coverage for Dabbene's March 13 accident, which involved the Cadillac owned by Moore's spouse, Defendant Gambone, and insured through Progressive?  State Farm says yes; Defendants say no.  If the policy does preclude coverage, Defendants argue that its relevant provisions are nevertheless unenforceable, as they conflict with both the express terms of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. §§ 1701-1799.7, and the public policy underlying the MVFRL.  Finally, Defendants raise an estoppel defense, arguing that State Farm has through its conduct waived the ability to challenge coverage.  As this is a diversity action, the substantive law of Pennsylvania applies.  *See Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

### 1.  *Policy Language Clearly and Unambiguously Precludes Coverage*

Whether coverage exists under an insurance policy is a question of law.  *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).  It is the insured's initial burden to prove the existence of coverage under the policy.  *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009).  "Under Pennsylvania law, an insurer has a duty to defend if the complaint filed by the injured party potentially comes within the policy's coverage."  *Sikirica*, 416 F.3d at 225.  In determining whether an insurer has a duty to defend, a court must first "determin[e] the scope of coverage under a policy" and then "examine the complaint in the underlying action to determine whether it triggers coverage."  *Id.* at 226.  To trigger this duty, the underlying complaint need contain only a single allegation falling within the scope of the policy's coverage.  *See TELA Bio, Inc. v. Fed. Ins. Co.*, 313 F. Supp.3d 646, 655 (E.D. Pa. 2018), *aff'd*, 761 F. App'x 140 (3d Cir. 2019).

Under Pennsylvania law, "the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997). "In most cases, 'the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations." *Id.* (quoting *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994)). Thus, when interpreting an insurance contract, courts "look first to the terms of the policy." *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595 (3d Cir. 2009). When the language of a policy clearly and unambiguously precludes coverage, the court must give that language effect, *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390-91 (3d Cir. 2012), unless "the insurer or its agent has created in the insured a reasonable expectation of coverage," *Reliance*, 121 F.3d at 903. If, however, the policy language is ambiguous, "the court must construe the policy 'in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage.'" *Nautilus Ins. Co. v. Bike & Build, Inc.*, 340 F. Supp.3d 399, 408 (E.D. Pa. 2018) (quoting *Kvaerner Metals Civ. of Kvaerner U.S., Inc. v. Comm. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006)). "Ambiguity exists where the language of the [policy] is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 159 (3d Cir. 2017) (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (1999)).

The parties do not dispute the following facts: (1) Moore and Gambone are married and reside together; (2) the Cadillac was owned by Gambone at the time of the accident; and, (3) the Cadillac was not insured through State Farm, but rather was insured pursuant to a Progressive policy on which Gambone was the named insured. Nor do the parties dispute that Moore's State

Farm policy provides coverage for a vehicle not listed on its Declarations Page only when that vehicle constitutes a non-owned, newly acquired, or temporary substitute car.  Defendants do not press the issue of whether the Cadillac constitutes a non-owned or newly acquired vehicle; accordingly, the only contested issue is whether the Cadillac driven by Dabbene at the time of the March 13 accident constitutes a temporary substitute car under the terms of the State Farm policy.

A car constitutes a "temporary substitute car" under the policy when two conditions are satisfied.  First, the car must "replace[] *your car* for a short time while *your car* is out of use."  Second, "neither *you* nor the *person* operating it own or have registered" the vehicle.  The policy defines the terms "you" and "your" to mean not only the named insured, but also to "include[] the spouse of the first *person* shown as a named insured if the spouse resides primarily with that named insured."  Because Moore is the first, and only, person shown as a named insured on the State Farm policy, the policy's definition of "you" and "your" includes not only Moore but also her resident spouse, Gambone.  And because a "temporary substitute car" cannot be owned by "you," as that term is defined in the policy, a car owned by either Moore or Gambone would not constitute a temporary substitute car.  The Cadillac was owned by Gambone at the time of the accident; thus, it was not a temporary substitute car.  The State Farm policy clearly and unambiguously precludes liability coverage for the Cadillac.

Defendants attempt to circumvent the policy's clear language, arguing that the "reasonable expectation of anyone reading the policy would be that the term 'You' would refer [only] to the named insured."  But they point to no actual policy language that would create such an impression.  Further, although they refer broadly to the "reasonable expectations" of the insured, there is no record evidence indicating that State Farm or its agents ever represented to

Defendants or otherwise created in them the reasonable expectation that their use of the separately-insured Cadillac would be covered under the State Farm policy. *See, e.g.*, *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004) (observing that Pennsylvania's reasonable expectations doctrine "is intended to protect against the inherent danger, created by the nature of the insurance industry, that an insurer will agree to certain coverage when receiving the insured's application, and then unilaterally change those terms when it later issues a policy"). Defendants further suggest that because the policy in certain instances makes specific reference to "your spouse," "[a]ny insured reading the policy would conclude that 'You' and 'Your Spouse' are two distinct persons." Ambiguity in a contract exists, however, where a policy provision or term "is reasonably susceptible to more than one interpretation." *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (quoting *McMillan v. State Mut. Life Assurance Co. of Am.*, 922 F.2d 1073, 1075 (3d Cir. 1990)). Defendants identify no policy provision or term in conflict with the policy's definition of "you" and "your." Given the policy's express definition of "you" to include a resident spouse of the first named insured, the policy's use of the word "you" in its "temporary substitute car" provision is susceptible to only one interpretation: to be covered under the policy, a temporary substitute car cannot be owned by either the named insured or the resident spouse of the first named insured.[7]

### 2.  *Definition of "You" and "Your" Does Not Violate the MVFRL*

A finding that the policy language clearly and unambiguously precludes coverage for

---

[7] Defendants broadly assert that the State Farm policy violates Pennsylvania's Unfair Insurance Practice Act, 40 P.S. § 1171.1, *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*, both of which prohibit "deceptive conduct." They present no authority for this claim. Regardless, "a deceptive act is 'the act of intentionally giving a false impression or a tort arising from a false representation made knowingly or recklessly with the intent that another person should detrimentally rely on it.'" *Corsale v. Sperian Energy Corp.*, 374 F. Supp.3d 445, 459 (W.D. Pa. Apr. 10, 2019). The record contains no evidence suggesting that State Farm engaged in such conduct in this case.

Gambone's Cadillac does not end the matter.  "Even clear and unambiguous insurance policy language may conflict with an applicable statute. . . .  In such situations, [the court] cannot give effect to the contractual provision."  *Miller v. Allstate Ins. Co.*, 763 A.2d 401, 404 (Pa. Super. 2000) (first alteration in original) (quoting *Kmonk-Sullivan v. State Farm Mutual Auto Ins.*, 746 A.2d 1118, 1121 (Pa. Super. 1999)).  Moreover, the unambiguous provisions of an insurance contract are void where those provisions violate a "dominant public policy."  *See Nationwide Mut. Ins. Co. v. Ridder*, 105 F. Supp.2d 434, 436 (E.D. Pa. 2000).  In this case, Defendants argue that the State Farm policy violates the express terms of the MVFRL, namely, its provision concerning named driver exclusions.  Defendants further contend that, by failing to insure risks associated with a resident spouse's separately-insured vehicle, the policy violates the remedial goal of the MVFRL to provide compensation to innocent victims of automobile accidents.

Defendants present no authority to support either claim.  To the extent Defendants argue that the State Farm policy violates the MVFRL's provisions concerning when a driver can be excluded on an automobile insurance policy, the MVFRL does contain a "named driver exclusion" provision providing that the first named insured may request that a "person be excluded from coverage while operating a motor vehicle," but only "if the excluded person is insured on another policy of motor vehicle liability insurance."  75 Pa.C.S. § 1718(c)(2). Defendants contend that, pursuant to this provision, Dabbene's exclusion under Gambone's Progressive policy for the Cadillac was necessarily dependent on Dabbene's use of the Cadillac being covered by the State Farm policy.  Even assuming this is true (Defendants contend it is not, as the record indicates that Progressive, and not Gambone, requested Dabbene's exclusion from the policy), it is difficult to see what it has to do with the present dispute.  Rather, this argument speaks only to whether Dabbene's exclusion from Gambone's Progressive policy was

done in accordance with the MVFRL.  The Progressive policy is not at issue here, and Defendants do not contend that State Farm ever represented to Progressive or anyone else that the State Farm policy would cover Dabbene's operation of the Cadillac.[8]

Moving to Defendants claim that the State Farm policy violates the remedial purposes of the MVFRL, the Court notes that the Pennsylvania Supreme Court has adopted a "cautious approach in examining whether a contract provision violates the often formless face of public policy." *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 752 (Pa. 2002).  "[A] party seeking to void an unambiguous provision in an insurance contract on public policy grounds bears a heavy burden."  *Safe Auto Ins. Co. v. Oriental-Guillermo*, 214 A.3d 1257, 1266 (Pa. 2019).  "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring that the contract is against public policy."  *Ridder*, 105 F. Supp.2d at 436.  Thus, public policy arguments have had traction in only a limited number of cases, presenting particularly remarkable facts.  "Courts have, for example, declined to enforce an agreement to appoint others to a political office, an agreement to illegally influence legislation, and an agreement that required the defendant to warn the plaintiff of any police investigations into the latter's activities."  *Oriental-Guillermo*, 214 A.3d at 1270 (Wecht, J., concurring) (footnotes omitted).

---

[8] Defendants further contend that "[t]he definition of 'you' in the Policy effectively elevates [Gambone] to 'Named Insured' status" which, according to Defendants, violates the express terms of the MVFRL.  There is no case law cited in support of this assertion.  In any event, the MVFRL does not contain a definition of "you" or otherwise specify how insurers must define the term "you" in their insurance contracts.  To the extent Defendants argue that the policy's definition of "you" conflicts indirectly with the MVFRL's definition of "named insured," defined to mean "[a]ny individual identified by name as an insured in a policy of private passenger motor vehicle insurance," 75 Pa.C.S. § 1705(f), it is hard to see how this would be case.  The policy's definition of "you" does not identify Gambone as a "named insured."  Rather, it provides that, when the policy uses the term "you," that term will mean both the named insured as well as the resident spouse of the first named insured.

Public policy should "be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Seiler v. Am. Int'l Ins. Co.*, 71 F. App'x 951, 954 (3d Cir. 2003) (quoting *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994)). In this case, Defendants refer the Court generally to the policy goals underlying the statutory provisions of the MVFRL.

Courts have recognized that "the MVFRL is a remedial statute that must be liberally construed to effectuate its policy of indemnifying victims of accidents for harm they suffer on Pennsylvania highways." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 208 (3d Cir. 2001). Here, Defendants appear to argue that because State Farm has not provided evidence that Moore received reduced premiums in exchange for the policy's definition of "you," that definition should give way to the MVFRL's remedial policy goal of compensating accident victims.[9] They cite to no authority, statutory or otherwise, supporting this assertion. They do cite broadly to the competing policy goals underlying the enactment of the MVFRL, namely, the tension between the statute's goal of mitigating the "spiraling consumer cost of automobile insurance" and its remedial objectives. *Oriental-Guillermo*, 214 A.3d at 1266 (quoting *Paylor*, 640 A.2d at 1235). But nowhere do they explain how an insurance policy that does not provide liability coverage for a separately-insured vehicle owned by the policyholder's resident spouse offends "the public health, safety, morals or welfare," *see Ridder*, 105 F. Supp.2d at 436, nor do they point to a "well-defined, undisputed policy" against such a provision in an insurance contract, *see Oriental-Guillermo*, 214 A.3d at 1271 (Wecht, J., concurring). Accordingly, Defendants fail to meet their heavy burden of establishing that the State Farm policy violates

---

[9] Defendants repeatedly contend that State Farm is obligated to provide coverage because it "received a premium to insure the risks associated with Dominic Dabbene driving home from work" in Gambone's Cadillac, but there is no record evidence supporting this assertion.

Pennsylvania's public policy.

In sum, without any authority or evidence indicating that the State Farm policy's definition of "you" conflicts with either the express language of the MVFRL or public policy, the Court is compelled to uphold the policy's provisions.

### 3.   *Defendants' Estoppel Defense is Unavailing*

Finally, Defendants contend that even if the State Farm policy precludes coverage for Dabbene's accident, State Farm is estopped from challenging coverage due to its alleged failure to timely and fairly inform Defendants of its coverage position.  The party asserting estoppel bears the burden of establishing the defense.  *Mendel v. Home Ins. Co.*, 806 F. Supp. 1206, 1215 (E.D. Pa. 1992).

Pennsylvania law imposes upon insurers a broad duty to defend insureds "whenever an underlying complaint may 'potentially' come within the insurance coverage." *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).  Nevertheless, "Pennsylvania counterbalances the insurer's broad obligation to defend even claims to which coverage may not apply by providing the insurer [with] the option of defending subject to a reservation of its rights later or simultaneously to contest coverage." *Selective Way Ins. Co. v. MAK Servs., Inc.*, 232 A.3d 762, 767 (Pa. Super. 2020) (alteration in original) (quoting *Erie Ins. Exch. v. Lobenthal*, 114 A.3d 832, 836-37 (Pa. Super. 2015)).  Accordingly, in Pennsylvania, an insurer may undertake an insured's defense without automatically waiving its ability to challenge whether the claim is in fact covered under the insurance policy.  *Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 419 (Pa. Super. 2010).

If, however, the insurer decides to undertake the insured's defense subject to a reservation of rights, its "reservation must: (1) be submitted [to the insured] in a timely fashion;

24

and (2) 'fairly inform the insured of the insurer's position' in order to preserve [the] insurer's assertion of policy exclusions once a defense of the insured has been mounted." *Selective Way*, 232 A.3d at 768 (quoting *Brugnoli v. United Nat'l Ins. Co.*, 426 A.2d 164, 167 (Pa. Super. 1981)).  A reservation of rights letter is timely if it is sent to the insured "close-in-time to the institution of a potentially covered legal action."  *Id.*  It fairly informs the insured of the insurer's position when it provides the insured with "notice . . . of the existing coverage issue appearing on the face of the [p]olicy."  *Id* at 769-70.  In short, to avoid waiving its ability to challenge coverage, an insurer must conduct a timely and adequate investigation of the insured's claim and "clearly communicate" to the insured any bases for disclaiming coverage evident on the face of the insurance policy.  *See id.* at 669 (quoting *Lobenthal*, 114 A.3d at 839).

Thus, in *Selective Way*—the only case relied on by Defendants to support their estoppel argument—the Pennsylvania Superior Court found that insurance company Selective Way had waived its ability to challenge coverage, where Selective Way undertook its insured's defense subject to a reservation of rights without providing the insured adequate notice of the rights being reserved.  *Id.* at 772.  MAK Services, a snow and ice removal company, was insured by Selective Way pursuant to a policy containing the following express snow and ice exclusion:

> This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of snow and ice removal activities that are performed for others by the insured or by any contractors or subcontractors working on the insured[']s behalf.  Snow and Ice Removal includes but is not limited to: snow plowing, snow blowing, snow or ice clearing, shoveling or salting, by means whether mechanical or by hand.

*Id.* at 764.  An individual slipped and fell on ice while walking through a parking lot maintained by MAK Services, and brought suit against the company.  *Id.* at 765.  Selective Way appointed defense counsel subject to a reservation of rights.  *Id.*  It sent MAK Services a reservation of

rights letter, which read in pertinent part:

> [P]lease be aware that Selective will be handling this matter under a reservation of rights.  This means that Selective reserves all rights reserved to it under applicable law, insurance regulations and policy provisions that may become relevant as this matter continues to develop.  Those rights include, but are not limited to, the rights to decline coverage for this claim and to withdraw assigned defense counsel.

*Id.*  The letter made no reference to the snow and ice exclusion.

When Selective Way later initiated a declaratory judgment action premised on the snow and ice exclusion, MAK Services argued that the above reservation-of-rights language "was 'insufficient to properly preserve the potential coverage defense of the Snow and Ice Removal exclusion,' and that Selective Way should be estopped from raising the policy exclusion."  *Id.* at 766.  On appeal, the Superior Court agreed, finding that:

> While the language in Selective Way's letter may have sufficiently apprised MAK Services that future exigencies might affect coverage, it provided no notice whatsoever of the existing coverage issue appearing on the face of the Policy, *i.e.*, the snow and ice removal exclusion.  Any complete review of the Policy would have immediately revealed the existence of this exclusion.  Such a revelation which would have vitiated any obligation that Selective Way had to defend or indemnify MAK Services with equal speed.  Instead, the boilerplate language relied upon by Selective Way obfuscated this absolute defense to coverage, and caused MAK Services to reach the reasonable conclusion there was no pressing need to secure back-up counsel.

*Id.* at 769-70.  By failing to "'clearly communicate' [to its insured] the extent of the rights being reserved," *id.* at 772 (quoting *Lobenthal*, 114 A.3d at 839), the court found that Selective Way had "lulled [MAK Services] into a sense of security," thereby prejudicing MAK Services in the underlying action, *id.* at 771 (quoting *Nichols v. Am. Cas. Co. of Reading, Pa.*, 225 A.2d 80, 82 (Pa. 1966)).  To correct for this prejudice, the court estopped Selective Way from challenging coverage on the basis of the snow and ice exclusion.  *Id.* at 772.

By contrast, in the present suit, State Farm notified Moore by letter dated April 3, 2019 that it had completed its investigation into Dabbene's accident and would be disclaiming any and all coverage for the incident.  The April 3 letter—sent less than a month after Dabbene's accident and prior to Cieri initiating the underlying action—informed Moore of State Farm's position that the Cadillac was not a covered vehicle under the State Farm policy, given that the vehicle was owned by Gambone, Moore's spouse.  When Gambone's counsel contacted State Farm on April 8, 2019 to request that it open a defense file, State Farm responded on April 15, reiterating that it was "disclaim[ing] any and all coverage because the vehicle that was being driven by [Dabbene] at the time of the loss does not qualify as a covered vehicle under our policy."  When Defendants' counsel informed State Farm on August 26 of the underlying action and demanded a defense and indemnification for Cieri's claims, State Farm agreed to undertake the defense subject to an express reservation of rights.  Specifically, State Farm informed Defendants by letter dated September 12, 2019 that it reserved its right to disclaim coverage for the following reason: "It is questionable whether the vehicle involved in the accident constitutes either temporary substitute, newly-acquired, or a non-owned automobile or car as covered in the policy."

Defendants attempt to frame State Farm's decision to defend Defendants in the underlying action as a reversal of its prior determination that Dabbene's accident was not covered under the policy.  But again, Pennsylvania law permits an insurer to undertake an insured's defense subject to a reservation of rights, as long as the insurer timely provides the insured with adequate notice of any existing coverage issues appearing on the face of the policy. *See Selective Way*, 232 A.3d at 769; *Brugnoli*, 426 A.2d at 167.  Unlike in *Selective Way*, where the insurer's reservation of rights letter informed the insured only "that future exigencies might

affect coverage," State Farm's reservation of rights letter clearly communicated to Defendants the specific coverage issue it is relying on in this matter, *i.e.*, whether the Cadillac constitutes a covered vehicle—a "temporary substitute"—under the policy. *See Selective Way*, 232 A.3d at 769. Defendants had sufficient notice of the present coverage issue at the time State Farm undertook their defense; accordingly, State Farm is not estopped from disclaiming coverage under the policy.

## III.    CONCLUSION

For the foregoing reasons, Cieri's Motion to Intervene shall be denied, and State Farm's Motion for Summary Judgment shall be granted.

An appropriate order follows.

**January 5, 2021**                                **BY THE COURT:**

**/s/Wendy Beetlestone, J.**


**WENDY BEETLESTONE, J.**